BOULAHANIS v PREVO'S FAMILY MARKET, INC

SOWERBY v PREVO'S FAMILY MARKET, INC

Docket Nos. 197343, 197344. Submitted January 13, 1998, at Lansing. Decided June 2, 1998, at 9:00 A.M. Leave to appeal sought.

Karen Boulahanis and George Boulahanis, for himself and as next friend of minors Bridgit, Kara, and Brian Boulahanis, brought an action in the Mason Circuit Court against Prevo's Family Market, Inc., IBP, Inc., and Spartan Stores, Inc., alleging breach of an implied warranty and negligence after the Boulahanises contracted a disease from eating ground beef contaminated with E. Coli. The meat had been processed by IBP, distributed by Spartan Stores, and sold by Prevo's Family Market.

Janis Sowerby, as personal representative of the estate of Scott M. Hinkley, brought a similar action in the same court against the same defendants after the decedent died from the same disease.

The actions were consolidated, and the court, Richard I. Cooper, J., granted summary disposition for the defendants. The court ruled that the actions are preempted by the Federal Meat Inspection Act, as amended by the Wholesome Meat Act, 21 USC 601 *et seq.* The plaintiffs appealed, and their appeals were consolidated.

The Court of Appeals *held*:

The Federal Meat Inspection Act provides for meat inspections by the United States Department of Agriculture and requires that meat found not to be adulterated be marked, stamped, tagged, or labeled as "Inspected and passed." Before 1994, which is before the date when the plaintiffs' actions arose, the USDA did not consider meat and poultry bearing pathogens such as E. Coli or salmonella to be adulterated and did not require meat producers to test for the presence of bacteria. Nor did the federal act require inspection or investigation to detect the presence of the pathogens.

When a federal regulatory agency has deliberately concluded that regulation is not appropriate in a given area, federal inaction will preempt state law not identical to it. Here, the plaintiffs' state common-law actions seek to hold the defendants liable for failing to detect the presence of E. Coli in meat at a time when they were not required to do so by federal law. Because such liability would

be in conflict with federal law, the plaintiffs' actions are preempted by federal law.

Affirmed.

1. CONFLICT OF LAWS — PREEMPTION — FEDERAL LAW — STATE LAW.

Federal preemption is either express or implied; if express, the intent of Congress to preempt state law must be stated clearly in the language of the federal statute; implied preemption may be in the form of field preemption or conflict preemption; field preemption may be found where the state law at issue regulates conduct in a field that Congress intended the federal government to occupy exclusively; conflict preemption exists when it is impossible to comply with both state law and federal law, or where the state law stands as an obstacle to the accomplishment of the objectives of Congress.

2. CONFLICT OF LAWS — PREEMPTION — FEDERAL LAW — STATE LAW.

Conflict preemption is compelled not only when a state law is in conflict with a federal statute, but also when it conflicts with a valid federal regulation; conflict preemption is also compelled when a state law is in conflict with a federal regulatory agency's intentional decision not to regulate.

3. CONFLICT OF LAWS — PREEMPTION — FEDERAL LAW — STATE LAW.

State law, for purposes of federal preemption, need not be a state statute; a state common-law cause of action may constitute state regulation subject to preemption if the cause of action would impose, through an award of damages, a requirement not found in federal law.

*Christopher Pencak* (*Sommers, Schwartz, Silver & Schwartz, P.C.*, by *Patrick Burkett*, of Counsel), for the plaintiffs.

*Smith, Haughey, Rice & Roegge* (by *Lance R. Mather*), for Prevo's Family Market, Inc.

*Cross Wrock, P.C.* (by *Jack O. Kalmink*), for IBP, Inc.

*Charles H. Worsfold*, for Spartan Stores, Inc.

Before: MACKENZIE, P.J., and HOLBROOK, JR., and SAAD, JJ.

MacKenzie, P.J.

## I

### NATURE OF THE CASE AND BACKGROUND

These consolidated cases involve breach of implied warranty and negligence claims that plaintiffs brought after consuming ground beef contaminated with Escherichia Coli 0157:H7 (E. Coli), a pathogen found in the fecal matter of cattle that can be spread when it is intermixed with ground meat products. The contaminated meat was produced by defendant IBP, Inc., distributed by defendant Spartan Stores, and sold by defendant Prevo's Family Market, Inc., in mid-July 1993. After consuming the meat, plaintiffs Kara and Brian Boulahanis, who are minor children of plaintiffs Karen and George Boulahanis, became seriously ill with hemolytic uremic syndrome (HUS) caused by E. Coli bacteria. Plaintiffs Bridgit and Karen Boulahanis became less seriously ill. Three-year-old Scott Michael Hinkley, the son of plaintiff Janice Sowerby, died from E. Coli associated HUS. Plaintiffs appeal as of right from an order granting summary disposition to defendants on the basis that plaintiffs' claims are pre-empted by the Federal Meat Inspection Act, as amended by the Wholesome Meat Act, 21 USC 601 *et seq.* (FMIA), and its regulations. We affirm.

## II

### ANALYSIS

#### A. THE FEDERAL MEAT INSPECTION ACT

The purpose of the FMIA is to assure that meat distributed to consumers is wholesome, not adulterated, and properly marked, labeled, and packaged. 21 USC 602. Generally, the act sets standards for acceptable

meat and meat products, provides for inspections by
the United States Department of Agriculture (USDA),
and requires that meat "found to be not adulterated
shall be marked, stamped, tagged, or labeled as
'Inspected and passed.' " 21 USC 604. The term
"adulterated" is defined at 21 USC 601(m), which
provides:

> The term "adulterated" shall apply to any . . . meat . . .
>
> (1) If it bears or contains any poisonous or deleterious
> substance which may render it injurious to health; but in
> case the substance is not an added substance, such article
> shall not be considered adulterated under this clause if the
> quantity of such substance in or on such article does not
> ordinarily render it injurious to health.

Before 1994, which is before the date these plain-
tiffs' actions arose, the USDA did not consider meat
and poultry bearing pathogens such as E. Coli or sal-
monella to be "adulterated" and did not require meat
producers to test for the presence of these bacteria.
*Texas Food Industry Ass'n v Espy*, 870 F Supp 143,
145 (WD Tex, 1994). Nor did the FMIA require inspec-
tion or investigation to detect the presence of the
pathogens.

On October 17, 1994, the USDA announced its deci-
sion to treat E. Coli as an adulterant and gave notice
of a new E. Coli sampling program. *Texas Food
Industry, supra*, p 145. In 1996, 9 CFR 310.25 was
promulgated. That regulation recognizes E. Coli and
salmonella as adulterants, requires sampling of live-
stock carcasses for E. Coli testing, and sets criteria
for evaluation of test results.

## B. FEDERAL PREEMPTION

Federal preemption is either express or implied. *Ryan v Brunswick Corp*, 454 Mich 20, 28; 557 NW2d 541 (1997). If express, the intent of Congress to preempt state law must be stated clearly in the language of the statute or impliedly contained in the structure and purpose of the statute. *Id.* In the absence of express preemption, implied preemption may exist in the form of field or conflict preemption. *Id.* Field preemption may be found where the state law at issue regulates conduct in a field that Congress intended the federal government to occupy exclusively. See *Martinez v Ford Motor Co*, 224 Mich App 247, 252; 568 NW2d 396 (1997). Conflict preemption exists when it is impossible to comply with both state and federal law, or where the state law stands as an obstacle to the accomplishment of Congress' objectives. *Kircos v Holiday Food Center, Inc*, 191 Mich App 82, 86; 477 NW2d 130 (1991); *Martinez, supra.* Conflict preemption is compelled not only when a state law is in conflict with a federal statute, but also when it conflicts with a valid federal regulation. *Kircos, supra*, p 86. Conflict preemption is also compelled when a state law is in conflict with a federal regulatory agency's intentional decision *not* to regulate. *Ryan, supra*, pp 35-36. Furthermore, the state "law" in conflict with a federal statute or regulation need not be a state statute; state common-law causes of action may constitute state regulation subject to preemption if the cause of action would impose, through an award of damages, a requirement not found in federal law. *Id.*, p 34.

The FMIA includes an express federal preemption provision. 21 USC 678 reads in pertinent part:

> Requirements within the scope of this chapter with respect to . . . any establishment at which inspection is provided . . . which are in addition to, or different than those made under this chapter may not be imposed by any State . . . . Marking, labeling, packaging, or ingredient requirements in addition to, or different than, those made under this chapter may not be imposed by any State . . . but any State . . . may, consistent with the requirements under this chapter, exercise concurrent jurisdiction with the Secretary [of Agriculture] over articles required to be inspected . . . for the purpose of preventing the distribution for human food purposes of any such articles which are adulterated or misbranded and are outside of such an establishment.

On the basis of this language, it is clear that Congress has expressly preempted states from placing any additional or different requirements on meat producers other than those of the federal government. See, e.g., *Armour & Co v Ball*, 468 F2d 76 (CA 6, 1972). Under *Ryan* and *Martinez*, *supra*, any state tort action based on a theory that adulterated meat was distributed must therefore be based on standards that are identical to federal standards.

Plaintiffs contend that their tort claims are not preempted by federal law because neither Congress nor the USDA adopted regulations concerning the presence of E. Coli bacteria in meat products until 1994, the year after plaintiffs purchased the tainted meat in this case. They reason that because there were no regulations explicitly allowing the sale of meat contaminated with pathogens such as E. Coli or salmonella at the time of their injuries, state law claims based on the sale of E. Coli-contaminated meat do not conflict with then-existing federal law and should be allowed. We disagree.

In *Ryan, supra*, p 35, the Supreme Court made it clear that when a federal agency "has deliberately concluded that regulation is not appropriate in a given area, federal inaction will preempt state law not identical to it." That principle applies here. As previously noted, until 1994, the USDA did not consider E. Coli to be an "adulterant." Therefore, the USDA did not consider it necessary to inspect for E. Coli and allowed the distribution of E. Coli-contaminated meat. The justification was that the painstaking microscopic inspection of meat for pathogens such as E. Coli and salmonella was not feasible and not warranted when any bacteria would eventually be destroyed by the consumer upon proper preparation and cooking of the meat. See *American Public Health Ass'n v Butz*, 167 US App DC 93, 94, 96; 511 F2d 331 (1974). This intentional decision not to regulate the presence of E. Coli because it was not considered an adulterant carries the force of a positive enactment. *Ryan, supra*. Holding defendants liable for failing to detect the presence of E. Coli bacteria in the meat purchased by plaintiffs in 1993 would run contrary to the USDA's then-existing determination that inspection for E. Coli bacteria was not required. The trial court therefore properly concluded that plaintiffs' claims were preempted by federal law.

Affirmed.